IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GARRY ADAM,

      Plaintiff,

v.                                                                      Case No.  23-4023-JWB

ANDMARK WHITE LAKES APARTMENTS, LLC, et al.,

      Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants Alexander Forrest Investments, LLC ("AFI") and Andmark White Lakes Apartments, LLC's ("Andmark") joint motion for judgment on the pleadings (Doc. 58) and Defendant AFI's partial motion to dismiss (Doc. 33).  The motions are fully briefed and ripe for decision.  (Docs. 34, 49, 50, 54, 59, 84, 85, 96.)  The motions are GRANTED IN PART and DENIED IN PART for the reasons stated herein.

## I.      Facts and Procedural History

Plaintiff Garry Adam was a prior resident of the White Lakes Plaza Apartments ("the property") in Topeka, Kansas.  Until June 29, 2022, Defendant Andmark White Lakes Apartments, LLC, ("Andmark") was the legal owner of the property.  Defendant Alexander Forrest Investments, LLC ("AFI") served as the property management group for the property from December 2020 until June 2022.  (Doc. 112 ¶ 4.)[1]

---

[1] Plaintiff recently filed an amended complaint.  (Doc. 112.)  The amended complaint was filed to correct the name of one of the defendants and to substitute a defendant.  Otherwise, the substantive allegations are largely unchanged and do not impact the arguments raised by the Defendants moving for dismissal.  The parties filed a stipulation indicating that they believe that the pending motions can be ruled on without the need to file amended motions.  (Doc. 20.) Therefore, the court finds it is appropriate to rule on the pending motions to dismiss.

Plaintiff suffers from Autosomal Recessive Bestrophinopathy which causes rare retinal dystrophy that is characterized by central vision loss. Plaintiff's vision loss substantially limits his life activities. In November 2016, Plaintiff entered into a rental agreement for an apartment at the property, specifically Apartment #107 (the "unit"). (*Id.* ¶ 11.) On or about December 9, 2020, Plaintiff observed water leaking out of the ceiling over the bathtub. Between that day and February 25, 2021, Plaintiff submitted several requests and complaints to AFI requested that the leak and the related water damages be repaired. After his requests were ignored, Plaintiff filed a complaint with the United States Department of Housing and Urban Development. ("HUD") (*Id.* ¶ 15.) On or about March 31, 2021, Plaintiff, AFI, and Andmark entered into a conciliation agreement (the "agreement") as a result of Plaintiff's HUD complaint. The agreement required AFI and Andmark to grant Plaintiff's requests for reasonable accommodation as follows: provide correspondence to Plaintiff in 18-point font; exempt Plaintiff from being required to pay rent and submit maintenance requests in the online portal; and provide Plaintiff with a paper copy of his annual lease. (*Id.* ¶ 17; Doc. 59-1.)[2] The agreement also required AFI and Andmark to complete the outstanding maintenance repairs, renew Plaintiff's lease set to expire on April 30, 2021, and waive certain late fees. (*Id.* ¶ 17.)

On or about April 9, 2021, Plaintiff submitted maintenance requests to AFI for the following issues: 1) water damage dating back to December 9, 2020; 2) mold due to December 9, 2020 water damage; 3) maintenance and repair to central air ducts; 4) repair of malfunctioning garbage disposal; 5) repair of hall closet shelving; 6) repair of malfunctioning kitchen cabinet

---

[2] While Plaintiff has included some of the terms of the agreement in the allegations, Defendant has attached the agreement as an exhibit to its joint motion to dismiss. (Doc. 59-1.) The court may consider the conciliation agreement without converting the motion to one for summary judgment because the agreement was referenced in the complaint and the parties do not dispute its authenticity. *See GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).

doors; 7) repair and maintenance of leaking and malfunctioning water heater and air conditioning unit; 8) mold in common areas; 9) repair of malfunctioning dishwasher.  (Doc. 112 ¶ 18.)  AFI agents visited Plaintiff's unit twice as of June 12; however, Plaintiff's requested maintenance issues were not properly addressed by AFI or Andmark.  On June 12, the unit's bathroom and kitchen were again severely flooded.  On that same day, Plaintiff submitted an emergency maintenance request.  (*Id.* ¶ 21.)  Two hours later, an AFI representative visited the unit for approximately ten minutes and informed Plaintiff that a third party company would be there later that evening.  On June 13, a third party plumbing company visited the unit.[3]  AFI informed Plaintiff that the company would schedule a carpet cleaning and address the standing water in the unit.  (*Id.* ¶ 25.)  AFI never had a company come to clean the unit nor did they take any action with respect to the standing water.

On July 12, 2021, Plaintiff complained to AFI that the unit had no hot water.  AFI did not address this maintenance issue until September 8, 2021.  AFI requested that Plaintiff sign a document stating that the issue was rectified; however, the document was back dated to July 2021 and Plaintiff refused to sign it.  (*Id.* ¶ 28.)

On January 14, 2022, AFI sent Plaintiff a text message, in violation of the HUD agreement, falsely stating that he had unpaid charges.  On January 19 and 20, an AFI representative visited the unit and Plaintiff again complained of the numerous issues including mold, water damages, a malfunctioning heating unit, and other issues.  On January 24, an AFI representative painted the unit's bathroom but did not address the outstanding maintenance issues.  (*Id.* ¶ 33.)  On May 29, 2022, the unit flooded again, causing a hole in the bathroom ceiling.  Plaintiff submitted a maintenance request on May 31.  On June 1, the unit flooded again, causing the hole in the

---

[3] The amended complaint alleges that this visit did not occur until "nearly three days" had passed.  (Doc. 112 ¶ 24.) However, the date alleged is the day after the flooding.

bathroom ceiling to further deteriorate. (*Id.* ¶ 37.)  On June 8, an AFI representative visited the unit and said he would be back the next day.  On June 9, Plaintiff submitted a complaint to the City of Topeka's Code Enforcement Agency regarding the lack of running water, bathroom ceiling, malfunctioning dishwasher, flooding, malfunctioning HVAC, and malfunctioning toilet. On that same date, an AFI representative entered the unit and patched the bathroom ceiling but made no further repairs. (*Id.* ¶ 40.) On June 14, one of the two malfunctioning toilets was replaced. On that same date, Plaintiff was informed that his lease would not be renewed.  On June 22, an AFI representative spent fifteen minutes performing repairs before declaring that he was "done" and left the unit which flooded again that evening. (*Id.* ¶ 43.)  The unit flooded again on June 28. On June 30, Plaintiff observed that the bathroom ceiling again had a hole and the patchwork was hanging down into the bathtub.

Plaintiff further alleges that he received multiple electronic messages in violation of the agreement.  He also received several communications that were not in 18 point font in violation of the agreement.  (*Id.* ¶¶ 50–63.)

In July, Defendant OPG Ventures, LLC ("OPG") became the property manager for the property.  There were several issues regarding the unit that continued.  OPG made some repairs but told Plaintiff that they could not make all of the repairs while he was in the unit.  On August 23, a representative of OPG asked Plaintiff if he was going to move out or if he would like to be moved to another unit.  Plaintiff requested that correspondence related to the move be put in writing, which was agreed to, but then Plaintiff was never provided any such correspondence. (*Id.* ¶ 73.)  On September 8 and 9, Plaintiff moved out of the unit due to OPG and Defendant 37North White Lakes, LLC's ("37North") refusal to repair the unit.  37North was the owner of the property as of June 2022.  (*Id.* ¶ 81.)

Plaintiff filed this amended complaint against AFI, Andmark, OPG, and 37North alleging claims under the Kansas Landlord Tenant Act ("KLTA"), K.S.A. § 58-2543, the Fair Housing Act ("FHA"), the Rehabilitation Act, and Kansas state law.  Plaintiff alleges that Defendants violated the FHA by discriminating against him due to his status as a handicapped person with respect to the terms and conditions of the rental and the provision of services for the rental by refusing to permit reasonable modifications, refusing to make reasonable modifications to policies, and interfering with his exercise of his rights under the FHA (retaliation).  Plaintiff further alleges that Defendants misrepresented that a unit was not available. (Doc. 112 ¶ 95.)  Plaintiff alleges similar claims with respect to the Rehabilitation Act.  Defendants AFI and Andmark both move for judgment on the pleadings on the basis that the agreement precludes Plaintiff's claims.  Further, AFI moves to dismiss Plaintiff's complaint in part on the basis that it fails to state a claim.

## II.    Standard

Motions for judgment on the pleadings utilize the same standard as a motion to dismiss. *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003).  In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff.  *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).  Conclusory allegations, however, have no bearing upon the court's consideration.  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

## III.   Analysis

### I.    FHA

Defendants argue that the FHA precludes this action due to the execution of the conciliation agreement. Under the FHA, an individual may bring an action "whether or not a complaint has been filed under section 3610(a) of this title and without regard to the status of any such complaint, but if the Secretary or a State or local agency has obtained a conciliation agreement with the consent of an aggrieved person, no action may be filed under this subsection by such aggrieved person with respect to the alleged discriminatory housing practice which forms the basis for such complaint except for the purpose of enforcing the terms of such an agreement." 42 U.S.C. § 3613(a)(2). Defendant argues that Plaintiff's claims are precluded because he entered into the agreement and, as a result, may only bring an action to enforce the agreement.

This statute is similar to language in the conciliation agreement in that it precludes an action that was the basis of a prior HUD complaint if the parties entered into a conciliation agreement. That is not the case here for the majority of Plaintiff's claims. Although Plaintiff has some facts regarding Defendants' failures to correct the issues that were the subject of the agreement, the vast majority of the facts involve new maintenance issues. Further, Plaintiff asserts that he is maintaining his claims on the basis of the new discriminatory acts and also bringing an action for a breach of the agreement due to the failure to fulfill the obligations under the agreement. By the plain language of the statute, Plaintiff is permitted to bring "claims in federal court about subsequent acts of retaliation [or discrimination] that did not form the basis of the earlier administrative complaint." *Fleming v. Bailey*, No. 8:17-CV-2346-T-33MAP, 2018 WL 904287, at *5 (M.D. Fla. Feb. 7, 2018). Therefore, Plaintiff's claims that involve allegations of retaliation and discrimination which occurred after the administrative complaint and were not a part of that complaint would remain viable. After a review of the merits of the claims as discussed *infra*, Plaintiff's claims, with the exception of a portion of his failure to accommodate claim, may

6

proceed because they were not a part of the administrative complaint.  However, Plaintiff's claim of failure to accommodate by not providing written correspondence in 18-point font and accusing him of improper payment by not using the online portal involve requests for accommodation that were made prior to the agreement and granted in that agreement. (Doc. 112 ¶ 17; 59-1.)  Plaintiff's amended complaint makes no allegation that Plaintiff submitted any further requests for accommodation pertaining to general policies.   Therefore, Plaintiff cannot bring a claim of discrimination for failure to accommodate these requests as Plaintiff's requests were made within the context of the administrative proceedings.  Plaintiff's only remedy under the statute is to bring a claim to enforce the terms of the agreement.  As Plaintiff is not seeking this relief, this aspect of his FHA claim is subject to dismissal.

Plaintiff has also brought a claim of discrimination on the basis that Defendants refused to allow modifications.  This claim fails on the merits as discussed herein.  However, it appears to be based on failure to make repairs based on maintenance issues occurring after the agreement was entered.  Therefore, it would not be precluded under the agreement.

Defendants further contend that Plaintiff cannot bring an action for breach of the agreement because Plaintiff is not seeking enforcement of the agreement citing to § 3613(a)(2).  (Doc. 59 at 12.)  Again, the statute prohibits an action "under this subsection" based on the discriminatory conduct that formed the basis of the underlying HUD complaint unless that action is one for enforcement of the agreement.  § 3613(a)(3).  Plaintiff has alleged an action for breach of the agreement based on conduct occurring after the agreement.   Such an action is explicitly contemplated by the statute.   *See* 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or

7

the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.")

If the court interpreted the statute (and agreement) as broadly as Defendants suggest, a property owner could enter into a conciliatory agreement and continue to engage in discriminatory acts against a tenant without any fear of civil action. Such a reading is not consistent with the statutory language nor is it consistent with the purpose of the FHA. Moreover, Defendants fail to cite any authority that would suggest Plaintiff could not bring a breach of contract claim.

Defendants are entitled to dismissal of Plaintiff's FHA claim of failure to provide reasonable accommodation to the extent discussed. Plaintiff is allowed to proceed with his remaining claims as they did not form the basis of the earlier complaint.

## II.    Agreement

Next, Defendants argue that the terms of the agreement preclude Plaintiff from bringing her claims under the KLTA, the FHA, and the Rehabilitation Act. Under the terms of the agreement, Plaintiff is prohibited from bringing suit against AFI and Andmark "with regard to any and all claims, damages and injuries of whatever nature whether presently known or unknown, arising out of the subject matter of HUD Case Number 07-21-6795-8, or which could have been filed in any action or suit arising from said subject matter." (Doc. 59-1 ¶ 11.) Defendants argue that Plaintiff's maintenance issues and accommodation requirements were already raised in the HUD complaint and therefore waived under this provision. (Doc. 59 at 10–11.) In response, Plaintiff argues that the complaint in this action raises issues that occurred after the execution of the agreement.

Under the terms of the agreement, Plaintiff has waived any claim, damages, and injuries arising out of the claims he previously raised in the HUD complaint. According to the allegations,

8

Plaintiff's HUD complaint involved the flooding in the bathroom that occurred in December 2020 and the related damages.  Plaintiff's complaint in this case concerns a significant number of maintenance issues that occurred after the execution of the agreement.  While Plaintiff cannot bring claims for damages that involved the initial flooding, the agreement does not waive any claim for any damages or injuries that arose from conduct that was not the subject of the HUD complaint.  Plaintiff's allegations of retaliation based on Defendant's failure to conduct repairs and comply with the requested accommodations do not fall within this provision because they are based on conduct occurring after the execution of the agreement.  Plaintiff's allegations of discrimination based on a failure to accommodate with respect to communications and payments were clearly part of Plaintiff's complaint as the agreement details that the complaint involved a delay in Plaintiff's "reasonable accommodation" request.  (Doc. 59-1.)  Therefore, Plaintiff cannot bring claims for failure to accommodate as to these issues.[4]  Plaintiff can, however, proceed on his claim for breach of the agreement with respect to this conduct.

Therefore, Defendants' motion to dismiss counts one through three on the basis that they are precluded under the agreement is granted with respect to the failure to accommodate Plaintiff's request regarding communications and payments and any claim related to the initial flooding.  It is denied in all other respects..

### III.    Failure to State a Claim

AFI moves for dismissal of Plaintiff's claims under the FHA and the Rehabilitation Act on the basis that they fail to state a claim.  The court will address the claims in turn.

---

[4] Plaintiff also brings a claim of failure to accommodate with respect to requests for maintenance.  This claim fails on the merits but it is not barred by the agreement because it involves requests made after the agreement was entered into.

A.    FHA Dwelling Availability.    Plaintiff alleges that AFI violated the FHA by informing him that his lease would not be renewed even though the unit remained available.  Under § 3604(d), it is unlawful to represent that a dwelling is not available to an individual because of their handicap (and other protected bases).  To state a claim, Plaintiff must show the following: (1) he is disabled; (2) he applied for and was qualified to rent an apartment at the property; (3) he was denied the opportunity to rent or to inspect or negotiate for the rental of an apartment; and (4) the housing opportunity remained available.  *See Asbury v. Brougham*, 866 F.2d 1276, 1280 (10th Cir. 1989).

AFI contends that Plaintiff's allegations do not support a claim because there are no allegations that Plaintiff requested the renewal of his lease, AFI ended its involvement in the property in June 2022, Plaintiff was told in August 2022 that he could move to another unit, and Plaintiff voluntarily vacated the unit.  In response, Plaintiff merely argues that he has sufficiently alleged a claim because AFI told him that it wasn't renewing his lease and Plaintiff was living in the unit out of necessity so it was clearly available.  (Doc. 50 at 3.)

The court finds that Plaintiff's allegations are insufficient to state a claim against AFI with respect to the claim regarding dwelling availability.  Although Plaintiff alleges that AFI told Plaintiff it was not renewing his lease, Plaintiff further alleges that he was provided an opportunity to move into another unit in August 2022.  (Doc. 1 ¶ 73.)  Further, Plaintiff alleges that he moved out of the unit voluntarily because Defendants failed to "repair the unit to a habitable condition." (Doc. 1 ¶ 74.)  As such, the allegations do not support a finding that Plaintiff was denied the opportunity to rent an apartment or to negotiate a rental by AFI.  The fact that AFI might have told him that it was not renewing his lease does not support Plaintiff's claim that he was denied housing because Plaintiff continued to live in his unit while AFI was in control of the property.  *See Smith*

*v. Mission Assocs. Ltd. P'ship*, 225 F. Supp. 2d 1293, 1301 (D. Kan. 2002) (finding that the plaintiff did not state a claim when the plaintiff failed to show that he attempted to rent a unit after receiving a notice to vacate).  Further, AFI did not hinder Plaintiff's ability to rent from OPG because OPG gave Plaintiff the opportunity to move to a different unit so that his unit could be repaired.  In sum, the court finds that Plaintiff has not sufficiently alleged a claim under the FHA as to the representation of the unit's availability against AFI.

       B.     Disparate Treatment Discrimination Claim under § 3604(f).  AFI moves for dismissal of Plaintiff's disparate treatment discrimination claim.  Although Plaintiff's amended complaint appears to allege different theories, Plaintiff's response brief clarifies that he is bringing a claim of refusal to make reasonable modifications and/or accommodations under § 3604(f)(3). (Doc. 50 at 3–4.)  Therefore, the court will proceed to analyze Plaintiff's § 3604(f) claim as alleging both a refusal to accommodate and a refusal to permit modifications and proceed to analyze the merits of such claim.

       i.     Refusal of Reasonable Modifications.

       Plaintiff asserts that Defendants refused to make reasonable modifications under the FHA. AFI moves for dismissal of this claim on the basis that Plaintiff has not alleged a prima facie case. Under the FHA, a property owner discriminates when it "refus [es] to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied . . . by such person if such modifications may be necessary to afford such person full enjoyment of the premises . . ." 42 U.S.C. § 3604(f)(3)(A).  Viewing the allegations, Plaintiff has failed to allege that he asked AFI if **he** could make a reasonable modification to the unit.  Rather, the allegations are focused on the failure to AFI to provide proper maintenance and complete repairs.  Plaintiff's response to the motion to dismiss repeats this position.  (Doc. 50 at 4.) ("Plaintiff identified numerous instances

wherein Defendant AFI intentionally failed to cure major defects within Plaintiff's unit despite Plaintiff's repeated asks.")  Because Plaintiff has failed to allege that he requested a modification that he was going to complete and pay for and that such requested reasonable modification was refused, Plaintiff has failed to sufficiently allege a claim of discrimination on the basis of refusal to permit reasonable modification.

AFI's motion to dismiss Plaintiff's discrimination claim on the basis of failure to permit a reasonable modification is granted.

ii.      Refusal of Reasonable Accommodations.

Next, Plaintiff brings a claim of discrimination on the basis that Defendants failed to provide reasonable accommodations.  Under § 3604(f)(3)(B), discrimination under the FHA includes a "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  The required elements of a § 3604(f)(3)(B) claim are: (1) plaintiff is handicapped within the meaning of the FHA; (2) defendants knew or reasonably should have known of the plaintif"s claimed disability; (3) plaintiff requested an accommodation of his disability that was necessary to afford him an equal opportunity to use and enjoy the dwelling; (4) the requested accommodation was reasonable; and (5) defendants refused to make the requested accommodation.  *See Ngiendo v. Univ. Partners, LLC*, No. 22-2393-HLT, 2021 WL 5038780, at *3 (D. Kan. Oct. 27, 2021) (citing *Arnal v. Aspen View Condo. Assoc., Inc*., 226 F. Supp. 3d 1177, 1183 (D. Colo. 2016)).

Plaintiff's alleged accommodations include communicating with Plaintiff in 18-point font, allowing Plaintiff to pay rent via check instead of the online portal, and making repairs to the unit. The court has already determined that the claims regarding communications and rent payments are

precluded under the statute because Plaintiff's requests were made in the administrative proceedings and, therefore, Plaintiff is limited under the FHA to a claim to enforce the agreement. The remaining allegations include AFI's intentional failure to "cure major defects within Plaintiff's unit despite Plaintiff's repeated asks." (Doc. 50 at 4.)  Defendant argues that Plaintiff has failed to allege that the requested accommodation was necessary to afford him equal opportunity to use and enjoy the dwelling.  In response, Plaintiff contends that any argument that Plaintiff's complaints regarding the "condition of the unit were not related to his disability is simply nonsensical."  *Id.*  Plaintiff's "requests" for accommodation, however, were simply requests for repairs to the unit.  Plaintiff fails to cite to any authority for the proposition that requests for maintenance repairs are requests for accommodation.  The Tenth Circuit has held that "the thrust of a reasonable accommodation claim is that a defendant must make an affirmative change in an otherwise valid law or policy." *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501–02 (10th Cir. 1995).  The regulation echoes this view and provides two examples of reasonable accommodations: allowing a blind tenant to have a seeing eye dog in a property that does not allow pets and providing a tenant with mobility issues a reserved parking space. *See* 24 C.F.R. § 100.204. These examples of requested accommodations seeking a change in a policy.  In this case, Plaintiff has failed to identify that he requested an accommodation to an otherwise valid policy that applied to the tenants at the property.  Rather, Plaintiff simply complains that his requests for repairs were ignored.

The court finds that Plaintiff's amended complaint has failed to state a failure to accommodate claim under the FHA.

C.      Retaliation.

13

AFI moves for dismissal of Plaintiff's claim of retaliation under the FHA.  To prove a § 3617 retaliation claim, Plaintiff must show that "(1) [he] is a protected individual under the FHA, (2) [he] was engaged in the exercise or enjoyment of [his] fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of [his] protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Hatfield v. Cottages on 78th Cmty. Ass'n*, No. 21-4035, 2022 WL 2452379, at *8 (10th Cir. July 6, 2022).  AFI argues that Plaintiff has failed to allege the last two elements of this claim because his allegations are conclusory and are merely trivial or isolated disputes which do not constitute a violation under § 3617.  (Doc. 34 at 9.)  The court disagrees.

Plaintiff has sufficiently alleged that he has a disability and AFI had knowledge of the same.   Further, Plaintiff filed an administrative complaint against AFI and entered into an agreement regarding the same.  That agreement provided that AFI would abide by specific terms, including accommodating Plaintiff's disability and making repairs.   Shortly after the administrative proceedings concluded and the agreement was signed, AFI ignored the terms of the agreement by failing to send messages in 18-point font.  AFI also failed to make the required repairs.  AFI repeatedly ignored Plaintiff's maintenance requests and Plaintiff was essentially living in a unit that was uninhabitable.  Delays in housing maintenance can qualify as an interference with rights.  *See Ngiendo*, 2021 WL 5038780, at *6.  AFI also told Plaintiff that his lease would not be renewed.  Given the numerous allegations discussed and the fact that the actions closely followed his protected conduct, the court can infer a discriminatory motive.  *See Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1234 (10th Cir. 2000).

Plaintiff's allegations are numerous and detailed. They allege multiple violations of Plaintiff's prior requested and agreed to accommodations and they allege repeated major problems in Plaintiff's unit that were ignored. This is not simply a trivial dispute.

At this stage of the proceedings, the court finds that Plaintiff has sufficiently alleged an FHA retaliation claim.

D.      Rehabilitation Act.

Finally, AFI moves for dismissal on the basis that Plaintiff has failed to state a claim under the Rehabilitation Act. Plaintiff's amended complaint asserts that AFI discriminated against him and retaliated against him in violation of the Retaliation Act. The Rehabilitation Act prohibits any "program or activity receiving Federal financial assistance" from discriminating against "otherwise qualified" individuals "solely by reason of her or his disability." 29 U.S.C. § 794(a). The Tenth Circuit has defined the term "financial assistance" as receiving a subsidy. *DeVargas v. Mason & Hanger-Silas Mason Co., Inc.*, 911 F.2d 1377, 1382 (10th Cir. 1990) ("The term 'financial assistance' is not defined in the Rehabilitation Act. We apply the ordinary meaning of the term and conclude that an entity receives financial assistance when it receives a subsidy.")

AFI asserts that this claim fails because Plaintiff has failed to adequately allege that AFI receives federal financial assistance. Plaintiff's amended complaint simply alleges that "Defendants herein were the recipients of federal financial assistance and/or program and/or activity conducted by any executive agency as defined by the Rehabilitation Act of 1973." (Doc. 112 at ¶ 101.) This is entirely conclusory. Plaintiff has failed to allege any facts which support a finding that AFI received a subsidy from the federal government. In response, Plaintiff asserts that he has sufficiently alleged that "Defendant is a recipient of federal financial assistance and/or is a federal contractor as required by the Rehabilitation Act." (Doc. 50 at 7.) But Plaintiff has

failed to do so.  Further, even if AFI was a federal contractor, that is not sufficient to subject it to the Rehabilitation Act.  Courts have held that compensation for services provided by contractors is not sufficient; rather, the defendant must be a recipient of a subsidy.  *See Lee v. Corr. Corp. of Am./Corr. Treatment Facility*, 61 F. Supp. 3d 139, 144 (D.D.C. 2014); *DeVargas*, 911 F.2d at 1382.  Defendant AFI is a property manager for apartment units.  There is nothing in the allegations that would suggest that AFI receives a subsidy from the federal government in this role.

AFI's motion to dismiss Plaintiff's Rehabilitation Act claim against it is granted.

## IV.    Conclusion

Defendants' joint motion for judgment on the pleadings (Doc. 58) is GRANTED IN PART and DENIED IN PART.  The motion is granted as to Plaintiff's claims for failure to accommodate Plaintiff with respect to communications and rent payments and any claim related to  the initial flood in 2020.  The motion is otherwise denied.

Defendant AFI's partial motion to dismiss (Doc. 33) is GRANTED IN PART and DENIED IN PART.  AFI's motion is granted as to Plaintiff's FHA discrimination claim of misrepresentation of dwelling availability, failure to permit modification, and failure to accommodate.  The motion is also granted as to Plaintiff's claim under the Rehabilitation Act.  The motion is denied as to Plaintiff's FHA retaliation claim.

IT IS SO ORDERED.  Dated this 28th day of February, 2024.

_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE
